UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


MINNETTA J. JANSSEN,

      Plaintiff,

v.                                                              Case No. 8:23-cv-577-CPT

MARTIN O'MALLEY,
Commissioner of Social Security,[1]

      Defendant.
_____/


**O R D E R**

      The Plaintiff seeks judicial review of the Commissioner's denial of her claim for

Disability Insurance Benefits (DIB).  (Docs. 24, 28).  For the reasons discussed below,

the Commissioner's decision is affirmed.

I.

      The Plaintiff was born in 1971, completed high school and some post-secondary

education, and has past relevant work experience as a human resource advisor.  (R.

49, 132, 143).  In August 2015, the Plaintiff applied for DIB, alleging disability as of

May 2015 due to stage four melanoma, loss of memory from cancer treatment, and

---

[1] Mr. O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to Federal Rule of Civil Procedure 25(d), Mr. O'Malley is substituted for the former Acting Commissioner, Kilolo Kijakazi, as the Defendant in this suit.

problems with her thyroid and pituitary glands.  (R. 156–61).  In a decision issued in October 2015, the Social Security Administration (SSA) found that the Plaintiff was disabled as of May 1, 2015, because she met the listings relating to malignant melanoma with metastases.[2]  (R. 156–61).

Roughly eighteen months later, the SSA determined as part of its continuing disability review process that the Plaintiff's condition had improved such that she was no longer disabled as of February 1, 2017.  (R. 143–54).  This assessment was upheld by an Administrative Law Judge (ALJ) following a hearing held in May 2019.  (R. 116–42, 162–84).

The Appeals Council, however, remanded the matter to the ALJ for further proceedings so that he could consider supplemental evidence.  (R. 185–89).  The ALJ did so and thereafter authored a decision in July 2021, finding—as he did before—that the Plaintiff's disability ended on February 1, 2017.  (R. 190–215).

In January 2022, the Appeals Council again remanded the matter, this time so that a different ALJ could evaluate the opinion evidence in accordance with the governing rules.  (R. 216–20).  On remand, the new ALJ conducted a hearing, at which both the Plaintiff and her counsel appeared.  (R. 63–92).  The Plaintiff testified at that proceeding, as did a vocational expert.  (R. 87–90).

---

[2] The listings are found in 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  When a claimant's affliction matches an impairment in the listings, the claimant is automatically entitled to disability benefits.  *Id.*; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

In a decision issued in July 2022, the new ALJ found that: (1) the most recent favorable medical decision finding that the Plaintiff was disabled—known as the "comparative point decision" (CPD)—was the one issued in October 2015; (2) at the time of the CPD, the Plaintiff had the medically determinable impairment of malignant melanoma with metastasis; (3) since February 15, 2017, the Plaintiff had the medically determinable impairments of depression, osteoporosis, anxiety disorder, dysplastic nevus, adrenal insufficiency, embolism stroke, actinic keratosis, irritable bowel syndrome, a neurocognitive disorder secondary to chemotherapy, a nondisplaced stress fracture of the right third metatarsal, and a malignant melanoma with metastasis to the lungs and brain that was in remission; (4) the Plaintiff experienced "medical improvement" beginning on February 15, 2017, related to her ability to work because, as of that date, the Plaintiff's malignant melanoma no longer met or medically equaled the listings; (5) the Plaintiff had the residual functional capacity (RFC) as of that date to engage in a reduced range of light work even though some of her impairments as of February 15, 2017, remained "severe;" and (6) while the Plaintiff could not perform her past relevant work as a human resource advisor, she was capable as of February 15, 2017, of engaging in several jobs that exist in significant numbers in the national economy. (R. 37–61). In light of these findings, the ALJ concluded that the Plaintiff's disability ended on February 15, 2017—known as the "cessation date"—and that she did not become disabled again after that date. (R. 51).

The Appeals Council denied the Plaintiff's request for review.   (R. 1–6). Accordingly, the ALJ's decision became the final decision of the Commissioner. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted).

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[3]   A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."   42 U.S.C. § 423(d)(3).

Once a claimant has been found to be disabled, her continued entitlement to benefits is subject to periodic review.  20 C.F.R. § 404.1594(a).  Upon conducting such a review, the Commissioner may terminate a claimant's benefits if he finds that (1) there has been medical improvement in the claimant's impairment or combination of impairments related to her ability to work; and (2) the claimant is able to participate in substantial gainful activity.  42 U.S.C. § 423(f)(1).

In continuing disability cases, the Commissioner applies the procedures set forth in the pertinent Social Security Regulations (Regulations).   *See* 20 C.F.R.

---

[3] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

§ 404.1594.  These Regulations require a multi-step analysis in deciding whether a disability has ended.  In particular, for purposes relevant here, the ALJ must assess: (1) whether a claimant has engaged in any substantial gainful activity; (2) if not, whether the claimant suffers from an impairment or combination of impairments that meets or equals a listed impairment; (3) if not, whether there has been medical improvement; (4) if so, whether such medical improvement pertains to the claimant's capacity to work; (5) if so, whether the claimant's current impairment is severe; (7) if so, whether the claimant has the RFC to perform her past relevant work; and (8) if not, whether the claimant can perform other jobs that exist in significant numbers in the national economy given her RFC, age, education, and past work experience.  20 C.F.R. § 404.1594(f) (setting forth the multi-step process for DIB claims).

"Medical improvement" is defined under the Regulations as "any decrease in the medical severity of . . . impairment(s) . . . present at the time of the most recent favorable medical decision that [a claimant was] disabled or continued to be disabled." *Id.* § 404.1594(b)(1).  A determination of medical improvement "must be based on changes (improvement) in the symptoms, signs[,] or laboratory findings associated with [a claimant's] impairment(s)."  *Id.* at § 404.1594(c)(1).  A medical improvement is only related to a claimant's ability to work "if there has been a decrease in the severity . . . of the impairment(s) present at the time of the most recent favorable medical decision and an increase in [the claimant's] functional capacity to do basic work activities."  *Id.* § 404.1594(b)(3); *see also Demenech v. Sec'y of Health & Human Servs.*, 913 F.2d 882, 883 n.2 (11th Cir. 1990) (per curiam).

To ascertain whether there has been medical improvement, the Commissioner must compare the new medical evidence with the medical evidence that supported the most recent final decision deeming the claimant to be disabled (i.e., the CPD). *See McAulay v. Heckler*, 749 F.2d 1500, 1500 (11th Cir. 1985) (per curiam); *see also* 20 C.F.R. § 404.1594(c)(1). In rendering this determination, the burden is on the Commissioner, not the claimant, to show medical improvement. *See Simpson v. Schwenker,* 691 F.2d 966, 969 (11th Cir. 1982), *superseded by statute on other grounds as stated in Elam v. R.R. Ret. Bd.,* 921 F.2d 1210, 1214 (11th Cir. 1991); *Huie v. Bowen,* 788 F.2d 698, 705 (11th Cir. 1986) (holding benefits could not be terminated until medical improvement was demonstrated).

If a claimant in a continuing disability case is dissatisfied with an ALJ's decision, she may request that the Appeals Council review the matter. 20 C.F.R. § 404.967. In conducting this review, the Appeals Council must evaluate whether "'the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (quoting 20 C.F.R. § 404.970(b)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). As with other disability determinations, judicial review is confined to determining whether the Commissioner applied the correct legal standards and whether the decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per

curiam) (citation omitted).  Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citations omitted).   In considering whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or make credibility determinations.  *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam)[4] (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)).  Further, while a court will defer to the Commissioner's factual findings, it will not defer to his legal conclusions.  *Viverette*, 13 F.4th at 1313–14 (citation omitted); *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

## III.

The Plaintiff raises two challenges on appeal: (1) the ALJ did not properly weigh the opinions of the Plaintiff's treating psychiatrist, Dr. Marguerite Pinard, as well as the assessments provided by a consulting psychologist, Dr. Billie Jo Hatton; and (2) the ALJ erroneously discounted the Plaintiff's subjective complaints of pain and other symptoms in formulating the Plaintiff's RFC.  (Docs. 24, 28).  After careful review of the parties' submissions and the record, the Court finds that the Plaintiff's contentions lack merit.

---

[4] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

A.

Under the governing Regulation, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1527(b)).[5]  Medical opinions are statements from physicians, psychologists, or other acceptable medical sources "'that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite [her] impairment(s), and [the claimant's] physical or mental restrictions.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)).

An ALJ must state with particularity the weight given to a medical opinion and the reasons therefor.  *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 834 (11th Cir. 2011) (per curiam) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).  In rendering this determination, an ALJ must take into account: (1) whether the healthcare provider at issue has examined the claimant; (2) the length, nature, and extent of the provider's relationship with the claimant; (3) the medical evidence and explanation supporting the provider's opinion; (4) the degree to which the provider's opinion is consistent with the record as a whole; and (5) the provider's area of specialization.  20 C.F.R. § 404.1527(c).  While an ALJ is required to assess all of these

---

[5] Although this Regulation has been amended effective March 27, 2017, the new Regulation only applies to applications filed on or after that date.  *See* 20 C.F.R. § 404.1520c.  Because the Plaintiff submitted her application in August 2015, the older version of the Regulation is controlling here.  The parties do not contest otherwise.

factors, she need not explicitly address each of them in her decision. *Lawton*, 431 F. App'x at 833.

The Regulations set forth three tiers of medical opinions: (1) treating physicians; (2) non-treating, examining physicians; and (3) non-treating, non-examining physicians. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (citing 20 C.F.R. §§ 404.1527(c)(1)–(2), 416.927(c)(1)–(2)). Treating doctors' opinions are accorded the most deference because there is a greater likelihood that these providers will "be able to give a more complete picture of [a claimant's] health history." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019) (per curiam) (citing 20 C.F.R. § 404.1527(c)(2)). Accordingly, the ALJ must give a treating doctor's opinion substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam) (citation omitted). "Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his or her own medical records." *Schink*, 935 F.3d at 1259 (citations omitted). If an ALJ elects to "disregard a treating physician's opinion, . . . [she] must clearly articulate [her] reasons for doing so," *Hargress*, 883 F.3d at 1305 (internal quotation marks and citation omitted), and those reasons must be buttressed by substantial evidence, *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004), *abrogated on other grounds by Jones v. Soc. Sec. Admin., Comm'r*, 2022 WL 3448090 (11th Cir. 2022).

9

Unlike a treating physician, the opinion of a one-time examining doctor "[i]s not entitled to great weight." *Crawford*, 363 F.3d at 1160 (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)).   And the opinion of a non-examining doctor is generally afforded the least deference. *Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. Appx 830, 832 (11th Cir. 2017) (per curiam).   In the end, irrespective of the nature of a doctor's relationship with a claimant, an ALJ "is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion." *Id.* (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).

In this case, the Plaintiff began seeing Dr. Pinard in 2012.  (R. 4789–91, 5113). According to the record, Dr. Pinard is a psychiatrist who treats patients with cognitive dysfunction resulting from chemotherapy. (R. 5113).   Dr. Pinard diagnosed the Plaintiff at her first visit with neurocognitive disorder stemming from cancer treatment and prescribed her Adderall. (R. 5113, 5142).

In Dr. Pinard's subsequent records spanning the period between November 2018 and March 2022, she noted that the Plaintiff was fatigued and experienced problems with her memory and concentration.  (R. 5142–5147, 5256, 5536).   In November 2018, for example, Dr. Pinard recorded that the Plaintiff's concentration was fair and that she was "doing fine," but that she had trouble recalling details.  (R. 5142).  At the next visit in February 2019, Dr. Pinard described the Plaintiff's cognition as poor but with no acute worsening.  *Id.*  Similarly, in April 2019, Dr. Pinard reported that the Plaintiff had "been feeling extremely fatigued [and] lethargic for [the] past two

months," and that she could not "sustain activity for longer than [fifteen] minutes." (R. 5143).

Following several more appointments with the Plaintiff in 2019, Dr. Pinard advised in April 2020 that the Plaintiff "still [had] fairly profound memory problems" but was coping "as best she [could]." (R. 5145). Likewise, in June 2020, Dr. Pinard commented that the Plaintiff had "significant cognitive impairment which [had] not improved," and that she was "sleeping a great deal." (R. 5146).

Approximately nine months later, in March 2021, Dr. Pinard observed that the Plaintiff's concentration and memory reflected "word finding difficulties," and that her "overall appearance and social functioning [were] better than her overall cognitive processing." (R. 5147). In May 2021, Dr. Pinard found that the Plaintiff displayed fair to poor memory and poor concentration but good judgment and insight. (R. 5256). And in December 2021, Dr. Pinard stated that the Plaintiff had "severe memory problems" and "difficulties with concentration." (R. 5536).

The next year, in March 2022, Dr. Pinard characterized the Plaintiff as appearing tired, walking slowly, and unable to stand because of a fracture to her coccyx. *Id.* Dr. Pinard also noted that the Plaintiff's mood was a somewhat depressed and that her concentration and memory were poor. *Id.* Dr. Pinard wrote at the time that she believed the Plaintiff had a cognitive disorder secondary to pituitary stroke, and suffered from "severe fatigue both physically and cognitively." *Id.*

Between 2019 and 2022, Dr. Pinard rendered three opinions that addressed the Plaintiff's mental condition and her capacity to work. The first of these came in the

form of a medical source statement in April 2019, in which Dr. Pinard opined that the Plaintiff was markedly impaired in her ability (1) to engage in activities within a schedule and to maintain regular attendance; (2) to perform at a consistent pace without taking rest periods that were unreasonable in frequency and duration; and (3) to maintain attention and concentration for extended periods.  (R. 4789–91).  Dr. Pinard also opined in the same medical source statement that the Plaintiff had "long-term neurocognitive changes" due to a brain stroke, "which left her with permanent cognitive deficits."  (R. 4790).  Based on these assessments, Dr. Pinard estimated that the Plaintiff would likely be off-task twenty-five percent or more of the time and that she would be capable of only doing low stress work.  *Id.*  Dr. Pinard added that although the Plaintiff had no difficulties with interpersonal relations, she could not engage in regular work due to her cognitive disability.  *Id.*

Several months later, in September 2019, Dr. Pinard elaborated on two aspects of her April 2019 medical source statement as it related to the Plaintiff's cognitive state.  (R. 5113–14).  In particular, Dr. Pinard clarified her opinion that the Plaintiff would likely be off-task at least twenty-five percent of a workday, explaining that this assessment was predicated not only on the Plaintiff's subjective complaints but on Dr. Pinard's experience in treating patients with long-term cognitive dysfunction stemming from chemotherapy.  (R. 5113).  Dr. Pinard noted in this respect that the Plaintiff's chemotherapy treatment for her metastatic melanoma caused a rare side effect of permanently shutting down the Plaintiff's pituitary gland, which "resulted in neurobiological illness affecting [the Plaintiff's] concentration, memory, energy,

coping responses[,] and apathy." *Id.* Dr. Pinard described these symptoms as "typical of and consistent with the neurocognitive dysfunction associated with injury to the pituitary gland," and offered that "more often than not, [these types of symptoms] do not improve over time, and can worsen." *Id.*

Dr. Pinard also clarified that the Plaintiff would not be able to attend work regularly due to her cognitive disability. (R. 5113–14). Dr. Pinard advised in this regard that the Plaintiff's "most striking symptoms [were] poor attention, concentration, memory disturbance, and pronounced apathy," all of which contributed to reduced stress tolerance and work adaption. *Id.* Dr. Pinard further advised that these symptoms were "often mistaken for depression" but were normal for pituitary dysfunction. (R. 5114).

Approximately two-and-a-half years later, in March 2022, Dr. Pinard completed a supplemental medical source statement. (R. 5532–34). As pertinent here, Dr. Pinard observed in this supplemental statement that the Plaintiff was struggling with "typical cognitive fogginess associated with her brain injury," was "unable to retain information," and "must write everything in notebooks." (R. 5532). Noting that the Plaintiff's "functioning and energy level ha[d] progressively declined," Dr. Pinard opined that it was likely the nature of the Plaintiff's fatigue and chronic low energy would markedly interfere with her ability to engage in a "normal, sustained level of activity[,] including activities of daily living and participation in a competitive work situation." *Id.* Dr. Pinard also clarified that the comments in her treatment records that the Plaintiff was "doing fine" meant that her "baseline has not

significantly changed and that she maintain[ed] a positive outlook despite her difficulties." (R. 5533).

In her decision, the ALJ reviewed Dr. Pinard's opinions but afforded them little weight, deeming her assessments to be "excessively restrictive when considered against the vast majority of the record, including Dr. Pinard's own treatment notes." (R. 48). The ALJ reasoned:

> Dr. Pinard's opinions are not consistent with her own treatment records, which find only deficits in memory and concentration that range from fair to poor and prescribed consistent medications and dosages, without any significant adjustment to indicate any significant worsening or deficits. In addition, Dr. Pinard appears to rely heavily on the subjective claims provided by the [Plaintiff], which is not entirely consistent with the objective evidence in the record of the intellectual testing and her ability to recall information at other examinations, such as her physical therapy and appointments related to her foot. [The Plaintiff] was also able to provide detailed information about her conditions, daily activities, and work history at the hearings and testify at multiple hearings without significant issue from a lay perspective. Moreover, these extreme limitations are inconsistent with the [Plaintiff's] own reported ability to perform essentially all activities of daily living, like liv[ing] alone, car[ing] for herself, perform[ing] chores, shop[ping], driv[ing], spend[ing] time with others, and go[ing] out to eat. These significant limitations are also inconsistent with the very routine and conservative treatment provided by Dr. Pinard.

(R. 48–49) (internal citations omitted).

While largely discounting Dr. Pinard's opinions, the ALJ assigned partial weight to the opinion of Dr. Hatton, who—as referenced above—is a consulting psychologist. (R. 48). Dr. Hatton interviewed the Plaintiff in May 2017, tested her intelligence, and assessed her memory. (R. 1381). Dr. Hatton found that the Plaintiff

14

exhibited "mild relative weaknesses in immediate visual recall, visual working memory[,] and in delayed memory" and that her cognitive condition "likely represent[ed] a mild decline from her previous level of function[ing] given a description of her previous job duties and efficiencies." (R. 1384). Dr. Hatton further found that the Plaintiff exhibited a low average full scale IQ score, as well as "weaknesses in immediate auditory recall, pattern recognition[,] and in retention of long-term factual data" but showed "strengths in vocabulary, arithmetic reasoning, perceptual organization skills[,] and an ability to see parts in relation to wholes." *Id.* Dr. Hatton concluded that the Plaintiff had "areas of mild weakness" but was capable of "understand[ing] and follow[ing] simple to fairly complex directions[,]" even though "it [took] her longer to process information than it did in the past." (R. 1385). Dr. Hatton additionally concluded the Plaintiff "did not show evidence of any significant cognitive slowing" but "appear[ed] to have mild deficits in areas of short-term memory." *Id.*

The Plaintiff now raises a series of arguments in support of her challenge to the ALJ's analysis of this medical opinion evidence.[6] Her first contention is that the ALJ failed to adhere to the Regulation relating to the evaluation of a treating physician's opinion, insofar as she did not account for either Dr. Pinard's lengthy relationship with the Plaintiff or Dr. Pinard's specialized expertise in treating cancer patients. (Doc. 24 at 10–11, 13–14). This argument fails.

---

[6] The Court has reordered the Plaintiff's arguments to facilitate its disposition of same.

In her decision, the ALJ cited the regulatory provision that sets forth the applicable treating physician standard—i.e., 20 C.F.R. § 404.1527—and acknowledged that the Appeals Council had remanded the case for her consideration of the opinion evidence in accordance with this Regulation.  (R. 37, 43).  Contrary to the Plaintiff's suggestion, the fact that the ALJ did not expressly examine each of the factors listed in 20 C.F.R. § 404.1527—such as Dr. Pinard's area of specialization and the length, nature, and extent of her relationship with the Plaintiff—is of no moment, as the ALJ was not obligated to do so.  *See Lawton*, 431 F. App'x at 833 (stating that an "ALJ is not required to explicitly address each of th[e section 404.1527] factors").  All that was demanded of the ALJ, as discussed earlier, was that she "provide 'good cause' for rejecting [Dr. Pinard's] medical opinions."  *Id.* (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  As detailed in the ALJ's decision and below, it is evident that the ALJ did so here.

The Plaintiff next argues that the ALJ erred in concluding that Dr. Pinard's opinions were not consistent with her own records.  (Doc. 24 at 11–13); (Doc. 28 at 1–2).  According to the Plaintiff, the ALJ wrongly described Dr. Pinard as finding "only . . . deficits in [the Plaintiff's] memory and concentration that ranged from fair to poor."  (Doc. 24 at 12) (citing R. 48).  The Plaintiff contends in this respect that Dr. Pinard recorded only one instance where she perceived the Plaintiff's concentration to be "fair" but otherwise described the Plaintiff's concentration and memory as "poor" or "impaired."  *Id.* at 13 (citing R. 5142–5147, 5536).  The Plaintiff further maintains that the ALJ overly relied on Dr. Pinard's "normal results" concerning "aspects [of

the Plaintiff] that are not relevant" to Dr. Pinard's opinions.  *Id.* at 11–13.  This argument fails as well.

To begin, Dr. Pinard did, in fact, determine that the Plaintiff exhibited fair concentration in November 2018, and fair to poor memory in March 2021 (R. 5142, 5256), and the ALJ cited the records reflecting these findings in her decision (R. 45). The ALJ's characterization of Dr. Pinard's determinations relative to the Plaintiff's concentration and memory were thus correct and adequately substantiated.

The ALJ's conclusion that Dr. Pinard's opinions were "excessively restrictive" as compared to Dr. Pinard's own treatment notes is likewise properly supported.  (R. 48).  In her decision, the ALJ noted that Dr. Pinard detected deficits only with respect to the Plaintiff's memory and concentration.  *Id.*  Otherwise, as the ALJ observed multiple times elsewhere in her decision, Dr. Pinard mainly described the Plaintiff's mental status examinations to be within normal limits in the areas of insight, judgment, thought content, and thought processes.  (R. 45–46).  Given that Dr. Pinard opined that the Plaintiff could not work due to her cognitive deficits, these more typical findings undermine Dr. Pinard's assessments, and the ALJ did not place undue emphasis on them.

Moreover, as the ALJ also explained in her decision, Dr. Pinard provided the Plaintiff with "very routine and conservative treatment," which included prescribing her "consistent medications and dosages[ ] without any significant adjustment to indicate any significant worsening or deficits."  (R. 48–49).  The Plaintiff does not challenge this reasoning.  Taken together, the ALJ clearly articulated the evidence that

17

led her only to minimally credit Dr. Pinard's opinion that the Plaintiff could not perform any full-time work.  *See Schink*, 935 F.3d at 1259.

The Plaintiff next argues that the ALJ failed to offer any basis for not affording greater deference to Dr. Pinard's findings regarding the Plaintiff's fatigue, tiredness, and lack of persistence and pace and, indeed, said "nothing" about them.  (Doc. 24 at 17–18).  This argument does not survive scrutiny as well.

As an initial matter, "there is no rigid requirement that the [an] ALJ specifically refer to every piece of evidence in [her] decision," so long as the reviewing court is able to determine that the ALJ's decision is predicated on the entirety of a claimant's medical condition.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (citation omitted).  In *Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531 (11th Cir. 2014) (per curiam), for instance, the Eleventh Circuit explained that an ALJ does not err by failing to address particular limitations within a physician's opinion where the ALJ's decision made clear that the ALJ considered the opinion as a whole.  *Id.* at 534 ("[T]he ALJ did not err by failing to specifically address [the claimant's] neurologist's opinion that she should avoid frequent overhead reaching, and that she needed to take [five]-minute breaks every [forty-five] minutes, as his written decision made clear that he considered both the neurologist's opinion and [the claimant's] medical condition as a whole.") (citing *Dyer*, 394 F.3d at 1211); *see also Newberry v. Comm'r, Soc. Sec. Admin.*, 572 F. App'x 671, 672 (11th Cir. 2014) (per curiam) ("[E]ven if the ALJ erroneously failed to explicitly assign weight to and discuss every aspect of [a physician's] opinion, this error was harmless because it is still clear that the ALJ's

18

rejection of the portions of [the physician's] opinion that are inconsistent with the ALJ's ultimate conclusion was based on substantial evidence.") (citations omitted).

Furthermore, the focus of Dr. Pinard's assessments was the Plaintiff's cognitive symptoms of concentration and attention.  Dr. Pinard opined, for example, that the Plaintiff would be off task twenty-five percent or more of the time and incapable of regularly attending work because of her "cognitive disability."  (R. 4790, 5113).  Dr. Pinard later clarified this assessment, stating that the Plaintiff's "most striking symptoms" were "poor attention, concentration, memory disturbance, and pronounced apathy," all of which Dr. Pinard found to contribute to the Plaintiff's "reduced stress tolerance and work adaption."  (R. 5113–14).

The ALJ also separately discussed throughout her decision the Plaintiff's reports of fatigue and cited Dr. Pinard's findings on that topic.  (R. 41–49).  And "to accommodate . . . the [Plaintiff's] physical symptoms, including primarily [her] fatigue," the ALJ concluded as part of her RFC determination that the Plaintiff could perform only a reduced range of light work.  (R. 47).  In light of the entirety of the ALJ's decision, it is apparent that she considered Dr. Pinard's opinions and the Plaintiff's medical condition as a whole.  *Adams*, 586 F. App'x at 534.

The Plaintiff next argues that the ALJ improperly discounted Dr. Pinard's assessments because—in the ALJ's words—Dr. Pinard "appear[ed] to rely heavily on the [Plaintiff's] subjective claims," which were not "entirely consistent" with the objective evidence developed at the Plaintiff's other medical appointments.  (Doc. 24 at 14–15) (citing R. 48–49).  This contention is flawed in two respects.  First, it

inaccurately suggests that the ALJ found Dr. Pinard to have rested her opinions *entirely* on the Plaintiff's complaints. *Id.* at 15. As shown above, the ALJ did not.

Second, the ALJ was correct that Dr. Pinard repeatedly referenced in her treatment notes what seemed to be the Plaintiff's own descriptions of her condition. This included Dr. Pinard's remarks in her records that the Plaintiff was "listening to books on tape, but [had] problems remembering details;" that the Plaintiff "need[ed] Adderal to stay alert;" that the Plaintiff "fe[lt] scattered and unfocused;" that the Plaintiff was "feel[ing] worried . . . tired, and having difficulties;" and that the Plaintiff was "feel[ing] stable but discouraged." (R. 5142–46). In addition, Dr. Pinard seemingly did not identify in her materials any test results or other medical records to support her conclusions. As a result, the ALJ did not err in taking into account Dr. Pinard's "heavy reliance" on the Plaintiff's subjective complaints. *See Crawford*, 363 F.3d at 1159 (finding an ALJ's decision to discount a treating physician's medical opinion to be buttressed by substantial evidence in part because the opinion "appear[ed] to be based primarily on [the claimant's] subjective complaints of pain"); *Clepper v. Berryhill*, 2018 WL 2100316, at *8 (N.D. Ala. May 7, 2018) (affirming the ALJ's decision to afford little weight to the opinion of a one-time examining physician where the "assessment [was] replete with references to [the claimant's] representations of his history and symptoms" and "[t]here [were] no references to test results, medical findings, or other medical records supporting [the claimant's] symptomology and its purported impact on him").

The Plaintiff relatedly argues that the ALJ substituted her judgment for that of Dr. Pinard in concluding that Dr. Pinard grounded her opinions primarily on the Plaintiff's self-reported symptoms. (Doc. 24 at 14–15). To illustrate this point, the Plaintiff points to Dr. Pinard's comment in her September 2019 letter that she predicated her assessments not only on the Plaintiff's "subjective claims," but also on her own knowledge, experience, and personal observation of the Plaintiff's behavior. (R. 5113–14). This argument in unavailing too.

Unlike the situation portrayed by the Plaintiff where an ALJ "play[s] doctor" and takes it upon herself to analyze medical evidence beyond her ken, *Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014) (per curiam), the ALJ here fulfilled her duty to evaluate the pertinent information in the record and to resolve the discrepancies she ascertained, *see* 20 C.F.R. §§ 404.1520b, 404.1527, 404.1545. The ALJ did so by analyzing the various conflicts between Dr. Pinard's assessments and the other evidence before the ALJ, including the results of testing performed on the Plaintiff, the treatment notes of other providers, the Plaintiff's daily activities, and Dr. Pinard's own records. (R. 48–49). In short, the ALJ did not "play doctor" here.

The Plaintiff next argues that the ALJ overstated the Plaintiff's daily activities that she could drive, shop, live alone, and care for herself in declining to defer to Dr. Pinard's opinions. *See* (Doc. 24 at 15–16); *see also* (R. 49). To bolster this contention, the Plaintiff asserts that the ALJ did not properly consider the limited extent of those activities and their short duration. (Doc. 24 at 15–16). This argument is similarly unpersuasive.

In her decision, the ALJ specifically considered the Plaintiff's testimony that her daily activities "cause[d] her to feel drained and tired" and that she "ha[d] difficulty concentrating and remembering things." (R. 44). Although the Plaintiff invites the Court to reweigh this evidence, the Court is prohibited from doing so under the applicable case law. *See Viverette*, 13 F.4th at 1314 (citation omitted). And, for the reasons discussed below, the ALJ did not error in attributing less than full weight to the Plaintiff's subjective complaints.

The Plaintiff's final argument in support of her first claim of error concerns the ALJ's evaluation of Dr. Hatton's opinion. In particular, the Plaintiff asserts that (1) the ALJ could not rely on Dr. Hatton's report to justify minimizing Dr. Pinard's assessments; (2) Dr. Pinard was better equipped than Dr. Hatton to gauge the extent of the Plaintiff's problems because Dr. Pinard is a psychiatrist with a medical degree and Dr. Hatton is only a psychologist; and (3) Dr. Hatton's diagnosis of mild cognitive impairment did not contradict the Plaintiff's symptoms. (Doc. 24 at 14, 16–17). None of these assertions has merit.

To start, contrary to the Plaintiff's suggestion, Dr. Hatton's opinion was not the sole basis for the ALJ's decision to discount Dr. Pinard's assessments. As explained above, the ALJ provided ample grounds to substantiate her good cause finding, including that Dr. Pinard's opinions were not buttressed by her own medical records, the Plaintiff's treatment regimen, and other objective medical evidence in the record. *See Lawton*, 431 F. App'x at 833 (stating that an ALJ has good cause for discounting a treating physician's opinion where the "(1) treating physician's opinion was not

bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records") (internal quotation marks and citation omitted); *see also Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (per curiam) (finding substantial evidence supported the ALJ's conclusion that there was good cause to afford more weight to a non-examining physician than two treating physicians in part because those treating physicians did not conduct a proper exam, relied too much on the claimant's subjective reports, and propounded "materially inconsistent" observations of the claimant).

With respect to the Plaintiff's complaints about Dr. Hatton's bona fides, the Plaintiff fails to show that Dr. Hatton was not qualified to assess the Plaintiff or that the ALJ was required to downgrade Dr. Hatton's opinion due to her educational background.  As for whether the Plaintiff's symptoms cohered with Dr. Hatton's diagnoses, the Court—as noted above—is prohibited from reweighing this evidence at this juncture.  *Viverette*, 13 F.4th at 1314 (citation omitted).

B.

The Plaintiff's second challenge—that the ALJ failed to properly evaluate her subjective complaints (Doc. 24 at 18–22)—is governed by the "pain standard."  *Dyer*, 395 F.3d at 1210 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).  Under this standard, the claimant must show "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical

condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Id.* (quoting *Holt*, 921 F.2d at 1223).

Where a claimant satisfies the pain standard, the Regulations dictate that the ALJ then assess the intensity and persistence of the claimant's symptoms to determine how they limit the claimant's capacity for work. *See* 20 C.F.R. § 404.1529(c); *see also* Social Security Ruling (SSR) 16-3p, 2017 WL 5180304 (S.S.A. Oct. 25, 2017) (applicable as of Mar. 28, 2016). The considerations relevant to this analysis include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate her pain or other symptoms; (5) treatment (other than medication) the claimant receives or has received for the relief of her pain or other symptoms; (6) any measures the claimant uses or has used to relieve her pain or other symptoms; and (7) other factors concerning the claimant's functional limitations due to pain or other symptoms. 20 C.F.R. § 404.1529(c); *see also* SSR 16-3p, 2017 WL 5180304.

After weighing "a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed [on appeal] for substantial evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)). The operative inquiry in this regard is not "whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r*

*of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (per curiam); *see also Davis v. Astrue*, 346 F. App'x 439, 440–41 (11th Cir. 2009) (per curiam).   In rendering this determination, an ALJ "need not cite particular phrases or formulations" so long as the reviewing court can be satisfied that the ALJ "considered [the claimant's] medical condition as a whole."  *Dyer*, 395 F.3d at 1210 (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)) (internal quotation marks omitted).  That said, if an ALJ elects to disregard a claimant's testimony concerning her subjective symptoms, "the ALJ must either explicitly discredit such testimony or the implication from the ALJ's opinion must be so clear as to amount to a specific credibility finding."  *Martinez v. Comm'r of Soc. Sec.*, 2022 WL 1531582, at *2 (11th Cir. May 16, 2022) (per curiam) (citation omitted); *see also Stowe v. Soc. Sec. Admin., Comm'r*, 2021 WL 2912477, at *4 (11th Cir. July 12, 2021) (per curiam) (same) (citing *Foote*, 67 F.3d at 1561–62).

In the end, the matter of "[s]ubjective complaint credibility is the province of the ALJ."  *Williams v. Kijakazi*, 2022 WL 736260, at *2 (M.D. Ala. Mar. 10, 2022) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014)).  As a result, a reviewing court will not disturb a clearly articulated credibility finding that is supported by substantial evidence in the record.  *Foote*, 67 F.3d at 1562 (citation omitted).

Here, the ALJ acknowledged in her decision that the Plaintiff reported experiencing, among other symptoms, fatigue, memory loss, and difficulties with concentrating.  (R. 43–44).  Further, in analyzing the Plaintiff's subjective complaints, the ALJ referenced the Eleventh Circuit's pain standard and her duty to account for

"all [the Plaintiff's] symptoms and the extent to which [those] symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence" based upon the applicable legal requirements.  (R. 43) (citing 20 C.F.R. § 404.1529).   The ALJ also made the explicit credibility determination regarding the Plaintiff's subjective complaints:

> [T]he [Plaintiff's] medically determinable impairment could have reasonably been expected to produce the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the objective medical and other evidence. . . .

(R. 44).

To bolster this conclusion, the ALJ cited treatment materials revealing that, as of June 2018, the Plaintiff was capable of being fully active with no restrictions, and that she reported to her physicians in 2022 that her "slight" increase in fatigue was manageable.  (R. 46–47).   As for the Plaintiff's cognitive impairments, the ALJ additionally noted that, according to the medical records compiled during the time frame from 2017 to 2022, the Plaintiff exhibited only moderate abnormalities and stated that her medication helped her concentrate and focus.  (R. 47).

The ALJ also observed that the Plaintiff's complaints were not corroborated by the objective evidence.  (R. 46).   As the ALJ detailed in her decision, this evidence included medical documentation reflecting that the Plaintiff had been in remission from cancer since December 2013; that she had normal physical examinations, no neurologic deficits, and normal cognition in March 2017; that she was deemed in June

2018 to have a score of zero on the ECOG Performance Status Scale,[7] which demonstrated she could be fully active with no performance restrictions; and that her neurooncologist commented in September 2018 that she "was doing great with no neurological deficits."  (R. 44, 46).

Moreover, the ALJ pointed out that while the Plaintiff complained of being tired and being unable to lift heavy items, the treatment notes and other items in the record indicated that she could drive, shop, live alone, prepare meals, clean her house, and tend to her own needs.  (R. 46).  The ALJ pointed out as well that the Plaintiff testified at the hearing that she could fully care for herself, could eat at restaurants with others, could lift up to ten pounds, could walk for half a mile, and could ambulate fifteen to thirty minutes a couple of times per week.  (R. 43–44, 46).

The ALJ's consideration of these daily activities in weighing the Plaintiff's subjective complaints was not improper.  *See* 20 C.F.R. § 404.1529(c)(3).  Indeed, the Eleventh Circuit has upheld an ALJ's reliance on activities akin to those at issue here in gauging the credibility of a claimant's symptoms.  *See, e.g., Raymond v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 766, 778 (11th Cir. 2019) (per curiam) (affirming an ALJ's decision to discount a claimant's subjective complaints, in part, because the claimant testified to walking his dog while holding a walking stick, driving eight miles to pick up his son from school each day, and operating a foot-pedal kayak); *McClung*

---

[7] An ECOG score "describes a patient's level of functioning in terms of their ability to care for themself, daily activity, and physical ability." *See* ECOG-ACRIN CANCER RESEARCH GROUP, https://ecog-acrin.org/resources/ecog-performance-status/ (last visited Sept. 25, 2024).

*v. Soc. Sec. Admin., Comm'r*, 744 F. App'x 676, 679 (11th Cir. 2018) (per curiam) ("[The claimant's] testimony that he was unable to work conflicted with the statements in his sister's function report that he drove, shopped, cooked, took care of his personal needs, managed his finances, and fraternized with friends and family and with . . . medical records that [the claimant] exercised.").

In sum, the ALJ made a clearly articulated credibility finding regarding the Plaintiff's subjective complaints, and that determination is adequately substantiated by the record, including the evidence discussed above. *See Foote*, 67 F.3d at 1562 (citation omitted); *see also Werner*, 421 F. App'x at 939 ("The question is not . . . whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").

In an effort to avoid this outcome, the Plaintiff contends that she is unable to perform tasks without resting frequently or taking extra time to do so. (Doc. 24 at 19–20). It is clear from the ALJ's decision, however, that the ALJ considered the Plaintiff's testimony that her daily activities caused her to feel drained and tired and that she had difficulty concentrating and remembering things. (R. 43–44, 46). The Plaintiff's attempt to have the Court reweigh this evidence cannot stand. *Carter*, 726 F. App'x at 739 (citation omitted).

Nor is the Court persuaded by the Plaintiff's attempts to equate her subjective complaints with symptoms associated with adrenal insufficiency and a neurocognitive disorder secondary to chemotherapy. (Doc. 24 at 19). As the Eleventh Circuit has explained, "[u]nder a substantial evidence standard of review, [a claimant] must do

more than point to evidence in the record that supports [her] position; [she] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam)).  The Plaintiff does not do so here.

Lastly, the Plaintiff criticizes the ALJ's finding during the course of her analysis that the Plaintiff's depression and anxiety disorder constituted severe impairments. (Doc. 24 at 20–21).  Other than suggesting that the ALJ did not understand the nature of the Plaintiff's alleged condition, the Plaintiff does not demonstrate what impact, if any, this finding had on the ALJ's disability determination.  *Id.*  In any event, the Plaintiff herself identified her anxiety and depressive disorder in a continuing disability report as limiting her ability to work.  (R. 533).

IV.

Based upon the foregoing, it is hereby ORDERED:

1.      The Commissioner's decision is affirmed

2.      The Clerk is directed to enter Judgment in the Commissioner's favor and to close the case.

SO ORDERED in Tampa, Florida, this 26th day of September 2024.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

29

Copies to:
Counsel of record